## THE COMMONWEALTH v. MARY W. SMITH.

Liquor License — Description of Place — Sufficiency of — Privilege Not Confined to Particular House.

A license to keep a tavern on a farm sufficiently designates the place and does not confine the privilege to any particular house, but only requires that it should be within the limits of the farm.

A license to keep a tavern in a town sufficiently specified the place and operated as a personal franchise coextensively with the boundary of the town and as locomotive as the grantee himself, and would authorize the keeping of a tavern and the retailing of liquors in any house in that town.

### APPEAL FROM WARREN CIRCUIT COURT.

December 10, 1864.

OPINION BY JUDGE DUVALL:

A statutory charter of 1856 to the town of Bowling Green conferred on the municipal "board" the exclusive right to regulate the sale of spirituous liquors within said town, "and also the right to tax and the exclusive right to license taverns in said town."

The first section of an Act of 1851 requires also the payment to the State of a tax not exceeding $10 on every license to keep a tavern, and the third section a tax not exceeding $25 on every license to sell spirituous liquors granted by authorized municipalities.

And the second section of an Act of 1854 provides that no municipal license to retail liquors granted "before the Revised Statutes went into effect" shall authorize such sale "until the tax to the State shall have been duly paid."

Under the authorities delegated by its charter to Bowling Green the town authorities licensed Mary W. Smith to keep a tavern and also retail spirituous liquors therein" in the town of Bowling Green" and charged and received from her $20 for her tavern license and $150 for her liquor license.

These licenses were granted in May, 1863, for one year thereafter. In September of the same year she also obtained license for the same purposes of keeping tavern and selling liquor in the "Morehead House," in which she was then living in said town, and she paid to the use of the State the taxes charged thereon.

About the 1st day of January, 1864, she removed to another house called the "Smithsonia" in the said town, and in February succeeding she obtained again from the municipal board licenses to keep tavern and retail liquors "in Bowling Green," and paid as before $170, although her first license had not expired.

After her removal to the "Smithsonia House" and before the date of her last licenses she continued to sell spirituous liquors by retail in the latter house, and for this she was indicted, and the law and the facts being referred to the court, it dismissed the indictment and the Commonwealth appeals to this court.

Although the powers granted in the charter are qualified by the general law not inconsistent with the terms and object of the grant, and although the second section of chapter 99 of the Revised Statutes providing for the grant of licenses by the County Courts to keep "tavern" in their respective counties directs those courts to designate the "place" where the tavern is to be kept, still we are of the opinion that even if this requisition constructively apply to the charter authorities of Bowling Green (a point we need not decide), that "town" is a "place" sufficiently specific as a described form would be sufficient identification of the "place" in the County Court license to keep a tavern in the county. Neither the letter nor the object of the requisition requires the designation of the house.

A license to keep a tavern on a farm sufficiently designates the "place" and does not confine the privilege to any particular house, but only requires that it should be within the limits of the farm;

and so a license to keep a tavern in Bowling Green sufficiently specified " the place " and operates as a personal franchise coextensively with the boundary of the town and as locomotive as the grantee herself was in that periphery.

Therefore, should the said second section be deemed applicable to the powers of the municipalities, we would nevertheless decide that a license to keep a tavern and sell liquors " in Bowling Green " would not only be sufficiently specific but would authorize the keeping of a tavern and the retailing of liquors in any house in that town.

Consequently, when Mrs. Smith opened her tavern in " the Smithsonia House," her license granted in May, 1863, authorized her to do so and to sell liquors therein, unless she had failed to pay the State tax.

There is neither proof nor suggestion that she did not pay the State as well as the local tax; on the contrary, as before assumed, the probability is strong, if not conclusive, that when she obtained the County Court license she paid both for the tavern and liquor privilege, without doing which the court had no authority to grant the license and, as the court had no jurisdiction over that matter in Bowling Green, we may presume that she resorted to its void license as an effectual mode of certifying the amount and the payment of the State tax.

And so far as the contrary does not appear, we must also credit the municipal board as having granted each license in a legal mode and made valid and effectual by the fulfillment of all the statutory regulations of bond and oath, and there is no opposing presumption or suggestion.

On these grounds we approve the judgment of the Circuit Court. On the law and facts as presented conviction and fine would have been hard and unjust, especially as the appellee had been so careful to avoid any violation of the law as through timidity or ignorance to obtain license three times in the same year for the same privilege and to have paid for them unnecessarily $340 when $200 was a maximum which she could have been required to pay. To add to this a fine for imputed misdemeanor in selling liquor without proper license would be hypertechnical, unauthorized, and cruel.

Wherefore, the judgment dismissing the indictment is approved.